Fox, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

(No. 1849—Decided December 18, 1945.)

*Mr. Robert J. Kelly,* for appellee.

*Mr. Hugh S. Jenkins,* attorney general, *Mr. C. G. L. Yearick* and *Mr. William T. Burgess,* for appellants.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery county, Ohio.

The record in this case shows that the claimant, Mabel Fox, appellee here, on the 24th day of May 1941, was employed by Florence Selders, who conducted a restaurant, known as "The Family Corner," at 1835 East Fifth street in Dayton, Ohio; that on such date the employer was subject to the provisions of the Workmen's Compensation Act; that Florence Selders failed to comply therewith; that on such date the claimant, while in the course of her employment, opened the refrigerator and a milk bottle fell out and broke and fragments of the bottle cut her left leg near the instep, from which injury the disability arose; and that she presented a claim to the Industrial Commission, which was allowed for the period beginning June 22, 1941, to September 7, 1941. Subsequently, to wit, on February 6, 1942, the claimant filed a motion for additional compensation and for payment of additional medical treatment after September 7, 1941, which claim was disallowed by the commission. On November 4, 1943, she filed her petition in the Common Pleas Court of Montgomery county. A jury was waived and the matter was submitted to the court which rendered judgment in favor of the claimant. A motion for a new trial by the Industrial Commission was overruled. From that judgment of the trial court, this appeal has been taken.

The Industrial Commission, one of the appellants here, assigns as errors the following:

1. The judgment of the Court of Common Pleas is contrary to law.

2. The judgment of the Court of Common Pleas is manifestly against the weight of the evidence.

3. Other errors apparent on the face of the record.

It is the contention of counsel for the commission that the claimant did not prove a causal relationship between the injury sustained on May 24, 1941, and the disability which was suffered after September 7, 1941. Counsel contend that claimant has clearly failed to make a *prima facie* case, as she failed to establish by expert medical testimony causal relationship as a probability. Counsel cite the cases of *Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, 27 N. E. (2d), 932; *Hof* v. *Industrial Commission,* 62 Ohio App., 241, 23 N. E. (2d), 659.

In the *Drakulich case,* a causal connection was not established between the injury to the claimant's back and his subsequent death from cancer of the liver. In that case the court held that causal connection must be established by the testimony of medical witnesses competent to testify on that subject. In the *Hof case,* the question arose as to whether the injury suffered in the course of employment accelerated a previous existing cardiac condition and hastened the death of the decedent. The court held that medical testimony was required to sustain such a claim.

In certain types of cases expert medical testimony is required to show causal connection between the injury and the disability. In point of time the disability may be so far removed from the injury, or the disability manifested may be of such a peculiar character, that the causal connection can be established only by expert medical witnesses.

We do not believe that the case at bar falls into that category of cases where expert medical testimony is required. Lay witnesses are permitted to testify with regard to matters which are within their knowledge and with which the average person is familiar. The

claimant in this case suffered an injury to her left instep caused by broken glass. The wound became infected and caused a swelling which prevented her from putting her weight on her left foot and caused her to use crutches for the greater part of a year. We believe that it is a matter of common knowledge that such a disability would arise by reason of the injury suffered by the claimant. However, three physicians were in contact with the claimant and two of these physicians testified that her disability was caused by the injury suffered on May 24, 1941. Consequently, in this case, we have direct testimony by expert medical witnesses that a causal connection did exist between the injury suffered by the claimant on May 24, 1941, and the disability which she suffered subsequent to September 7, 1941.

Since the commission contends that the judgment of the trial court is manifestly against the weight of the evidence, it will be necessary to give a brief review of the facts. The record shows that on May 30, 1941, six days after claimant suffered the injury, she called on her physician, John L. Carter, who testified that on that date he found an infected cut on her left instep. He treated the cut for a period of several days, attempting to clear up the infection. He testified that her condition did not improve, and that on June 23, 1941, he referred her to F. L. Shively, a surgeon. Shively testified that at the time she was referred to him she was suffering from an infection on her left leg, which he described as being "on the flexor surface of the lower leg," locating the wound a little higher than Carter or the claimant, both of whom testified that the infection was on the instep of the left leg. However, the record conclusively shows that Shively treated her for the injury which she suffered on May 24, 1941. Shively committed her to the Miami Valley Hospital where he attended her. Carter also testified

that he visited her while she was under the care of Shively in the hospital. After she left the hospital, Shively testified that he treated the lesion at his office and dismissed claimant on or about September 13, 1941. There is some evidence in the record to the effect that some differences arose between the claimant, Shively and his nurse immediately prior to the termination of Shively's services. The claimant returned to Carter, who testified that he examined her leg on September 19, 1941, and found that it had not yet healed and needed further treatment. Carter then referred her to Dr. James Shaffer. She made her first visit to Shaffer on September 20, 1941. Shaffer did not testify, but counsel agreed upon a stipulation. Shaffer stated that he first examined the claimant on September 20, 1941, "in regard to an ulcer on the left instep, being on the lower middle third, flexor aspect of the left leg"; and that he treated her on the following dates, September 20, 23 and 27, and October 7, 18 and 24, 1941, January 6, 7, 8, 15 and 29, February 23 and 24, and March 3, 5, 9, 13, 17, 21 and 28, 1942. Shaffer further stated that "all of the above mentioned treatments were made with reference to that condition." "That condition" to which Shaffer referred was the ulcer on the left instep. He further stated that on April 6, 1942, he performed an operation on the claimant for ligation of varicose veins at the Miami Valley Hospital, and on June 12, he performed an operation for skin graft on the claimant at The Miami Valley Hospital. It will be observed that Shaffer did not state that he treated the claimant from October 24, 1941, to January 6, 1942. The claimant testified that from October 29, 1941, to December 5, 1941, she was confined to the St. Elizabeth Hospital at the suggestion of Shaffer. She again went to the Miami Valley Hospital under the care of Shaffer on April 2, 1942, and left, July 30, 1942. The claimant testified that

when she first went to Shively he opened the wound and put three stitches in her instep; that later she went to the Miami Valley Hospital under his care for a period of approximately two weeks in the first part of July 1941; and that at the time Shively dismissed her and she returned to Carter, the wound was not healed and pus and blood were coming out of the wound. Upon being questioned relative to the treatment given her by Shaffer, the record shows the following:

"Q. During that time did Dr. Shaffer treat you and see you in the hospital? A. Yes, and he made two operations on the left leg.

"Q. Mrs. Fox, your injury upon your left instep, is that a continuation of the injury that you had arising on May 24, 1941?

"Mr. Patterson: Objection.

"Referee: Overruled.

"Mr. Patterson: Exception.

"A. Yes, sir.

"Q. Have you ever had any other injury on that instep? A. No, sir.

"Q. The particular treatment that Dr. Shively and Dr. Carter and Dr. Shaffer made were all for the same injury? A. Yes, sir."

The claimant contends that the disability which she suffered after September 7, 1941, was caused by the injury which she sustained on May 24, 1941, and her contention is supported by testimony of Carter and Shaffer. Shively alone stated that the wound which he first treated had completely healed, and that when he examined her on May 21, 1942, at the solicitation of the Industrial Commission, he found her suffering from an ulcer near the outer angle bone, which he described as a near breakdown of a varicose ulcer.

We have been unable to reconcile the statements of the three physicians. It was the duty of the court to weigh the evidence and it had the right to believe

certain portions of the testimony and to disbelieve other portions. The trial court apparently believed the testimony of the claimant, Carter and Shaffer.

After considering all the testimony in this case and giving due consideration to all the evidence, this court cannot conclude that the judgment of the trial court was manifestly against the weight of the evidence. Furthermore, as we have hereinbefore stated, there is direct evidence in this case given by medical witnesses to the effect that after September 7, 1941, the claimant was disabled by reason of the injury sustained on May 24, 1941; that she was confined to the hospital on two different occasions subsequent to September 7, 1941, and underwent numerous treatments for such injury; and that a causal connection between the injury suffered on May 4, 1941, and the disability subsequent to September 7, 1941, has been established by a preponderance of the evidence. We find no error in the record and, therefore, affirm the judgment of the trial court.

*Judgment affirmed.*

HORNBECK, P. J., and MILLER, J., concur.